UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| LKQ CORPORATION, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 11 C 2743 |
|  | ) |  |
| COREY THRASHER, | ) | Judge Ruben Castillo |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

LKQ Corporation ("LKQ") filed this action against its former employee, Corey Thrasher ("Thrasher"), alleging violations of state and federal law. (R. 5, First Am. Compl.) Presently before the Court is Thrasher's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (R. 12, Thrasher's Mot.) For the reasons stated below, Thrasher's motion is denied.

## RELEVANT FACTS

LKQ is a national supplier of salvage and aftermarket automobile parts to body shops, mechanical repair shops, and other customers. (R. 5, First Am. Compl. ¶ 6.) LKQ employs a sales force to call on its customers and procure purchase orders for its merchandise. (*Id.* ¶ 7.) On or about January 25, 2010, LKQ hired Thrasher as a Sales Representative calling on and servicing its customers and accounts in the Seattle metropolitan area and throughout the Northwest United States. (*Id.* ¶ 9.)

On or about January 29, 2010, at the outset of his employment with LKQ, Thrasher entered into a Confidentiality, Non-Competition, and Solicitation Agreement with LKQ (the

"Non-Competition Agreement"). (*Id.* ¶ 10.) As part of the Non-Competition Agreement, Thrasher agreed that he would not compete with LKQ either during his employment or for a year afterward. (*Id.* ¶ 11.) Further, "Thrasher specifically agreed not to solicit LKQ's customers during his employment or for a year afterward." (*Id.* ¶ 12.)

During his employment, Thrasher performed duties at, and worked out of, various LKQ facilities in Washington and Oregon. (*Id.* ¶ 17.) He also worked out of an office equipped with LKQ computer systems at his home in Custer, Washington. (*Id.*) Throughout the course of his employment, LKQ introduced Thrasher to "several LKQ clients that [had] been doing business with LKQ on a preferred basis for more than a decade, and with which Thrasher had no prior dealings." (*Id.* ¶ 18.)

By a letter dated January 27, 2011, Thrasher resigned from his position at LKQ, effective February 10, 2011. (*Id.* ¶ 19.) According to LKQ, however, since at least December 2010, Thrasher was employed by a competitor, B&R Auto Wrecking, Inc. ("B&R"), in the same sales capacity that he simultaneously filled for LKQ. (*Id.* ¶ 26.) His alleged employment with B&R, LKQ contends, was a "direct violation of this contractual and common law duties to LKQ." (*Id.*)

The same day he tendered his resignation, Thrasher, via email, solicited business from dozens of LKQ customers by providing them his new contact information with B&R, and telling the customers that the "'change . . . will be better' for them, and that he was 'look[ing] forward to the opportunity to continue to take care of each and everyone of [them].'" (*Id.* ¶ 20.) Many of the customers that received this email have used LKQ on a preferred basis to fill their needs for aftermarket and salvage parts for more than a decade, and had no dealings with Thrasher prior to his year-long employment with LKQ. (*Id.* ¶ 21.) Since January 27, 2011, Thrasher has

continued to solicit LKQ customers to purchase B&R merchandise and move their business from LKQ to B&R. (*Id.* ¶ 22.) In the period surrounding Thrasher's resignation, several LKQ clients have decreased their business with LKQ. (*Id.* ¶ 25.)

Sometime during the following month, Thrasher returned his desktop computer to LKQ's Portland facility with a hard drive that was wiped clean of various data. (*Id.* ¶ 27.) Other than the few fragments of information not permanently deleted from his desktop computer, Thrasher failed to return the information he collected during his employment. (*Id.* ¶ 29.)

On March 16, 2011, LKQ's legal counsel sent a certified letter to Thrasher demanding that he immediately cease and desist contacting LKQ customers and violating the Non-Competition Agreement. (*Id.* ¶ 30.) Thrasher failed to offer any response to LKQ's letter and has not ceased competing with LKQ or soliciting its customers. (*Id.* ¶ 31.) This lawsuit ensued.

## PROCEDURAL HISTORY

On April 26, 2011, LKQ filed its original complaint in this action, which it subsequently amended two days later. In its first amended complaint (the "complaint"), LKQ presents four claims. First, in Count I, LKQ presents a breach of contract claim in which it alleges that Thrasher breached the terms of the Non-Competition Agreement "by soliciting LKQ clients and commencing work for a competitor[.]" (*Id.* ¶ 35.) Next, in Count II, LKQ alleges that Thrasher breached his fiduciary duties by "soliciting LKQ customers and undertaking to perform services to and on behalf of B&R while ostensibly remaining in the employ of LKQ." (*Id.* ¶ 40.) Additionally, in Count III, LKQ avers that Thrasher violated the Computer Fraud and Abuse Act by accessing protected computers owned by LKQ without authorization. (*Id.* ¶ 45.) Finally, in Count IV, LKQ maintains that it is entitled to preliminary and permanent injunctive relief. (*Id.*

¶¶ 48-54.)

On May 9, 2011, Thrasher filed a motion to dismiss. (R. 12, Thrasher's Mot.) In his supporting memorandum, Thrasher presents three arguments. First, he contends that the Court lacks personal jurisdiction because the forum selection clause that LKQ relies upon in bringing this suit in Illinois is unenforceable. (R. 13, Thrasher's Mem. at 2-6.) Second, Thrasher argues that because the complaint fails to allege consideration, LKQ's breach of contract claim is fatally defective. (*Id.* at 6.) Third, he maintains that Count III should be dismissed because it fails to allege a violation of the Computer Fraud and Abuse Act. (*Id.* at 7.)

## LEGAL STANDARDS

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss for failure to state a claim, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level[.]'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "Plausibility" in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 514 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* In other words, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

Rule 12(b)(2) provides for dismissal where a court lacks personal jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). Once the defendant moves to dismiss the complaint under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citations omitted). In ruling on a motion to dismiss pursuant to Rule 12(b)(2), a court may consider matters outside of the pleadings. *See id.* When a court rules on a personal jurisdiction issue based on the submission of written materials, the plaintiff must make out a prima facie case of personal jurisdiction. *Id.* (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). In evaluating whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record. *Id.* (citing *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

## ANALYSIS

### I. Personal jurisdiction

The requirement that a court have personal jurisdiction flows not from Article III, but from the Due Process Clause. *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). By requiring that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign, the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as

to where that conduct will and will not render them liable to suit." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980)).

The protection provided by the Due Process Clause, however, is waivable. *Ins. Corp. of Ir., Ltd.*, 456 U.S. at 703. Specifically, challenges to personal jurisdiction may be waived by either express or implied consent. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1292 n.4 (7th Cir. 1989). Indeed, the law recognizes that there are a variety of arrangements by which a litigant may give express or implied consent to the personal jurisdiction of a court. *Burger King*, 471 U.S. at 473 n.14; *TruServ Corp. v. Flegles, Corp.*, 419 F.3d 584, 589 (7th Cir. 2005) (noting that objections to personal jurisdiction can be waived via a valid forum selection clause). One such arrangement is a forum selection provision. *Heller*, 883 F.2d at 1292 n.4 ("Obviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction."). Where forum selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend the Due Process Clause. *Id.* at 1291. Waiving objections to personal jurisdiction via a valid forum selection provision renders any examination of the defendant's contacts with the forum state unnecessary. *See, e.g., TruServ*, 419 F.3d at 589.

In this case, Thrasher argues that the entire Non-Competition Agreement, including its forum selection clause, is unenforceable under Illinois law. (R. 13, Thrasher's Mem. at 3.) Because the forum selection clause is the only basis for personal jurisdiction, Thrasher concludes that the complaint against him must be dismissed. (*Id.*) Prior to addressing his arguments under Rule 12(b)(6), the Court will first determine whether the forum selection clause contained in the Agreement can serve as the basis for personal jurisdiction.

6

A.  **Enforceability of the Non-Competition Agreement**

Under Illinois law, a legally enforceable contract is an exchange, and the elements of a contract include offer, acceptance, and consideration. *Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 624 (Ill. App. Ct. 2005) (citation omitted). "It is a basic tenet of contract law that in order for a promise to be enforceable against the promisor, the promisee must have given some consideration for the promise." *Id.* (citation omitted). Consideration is defined as a bargained-for exchange whereby the promisor receives some benefit or the promisee suffers detriment. *Id.* (citation omitted).

Under the traditional rule, consideration is relatively easy to show. As long as the person receives something of value in exchange for her own promise or detriment, the courts will not inquire into the adequacy of the consideration. *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996) (citing *White v. Vill. of Homewood*, 628 N.E.2d 616, 619 (Ill. 1993)). A different rule, however, applies when dealing with post-employment covenants not to compete. In considering the enforceability of post-employment covenants not to compete, a "court must determine whether there is adequate consideration to support the covenant not to compete." *Millard Maint. Serv. Co. v. Bernero*, 566 N.E.2d 379, 384 (Ill. App. Ct. 1990). In Illinois, continued employment for a "substantial period" is sufficient consideration to support an employment agreement. *Id.*

Courts' willingness to depart from the traditional refusal to inquire into the adequacy of consideration displays a sensitivity to the argument that continued employment is an illusory benefit when employment is at-will. *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 946 (7th Cir. 1994). "This judicially devised requirement of a 'substantial period' of postcovenant employment

7

avoids the need to investigate the employer's intentions; it does this by in effect creating an irrebuttable presumption that if the employee was fired shortly after he signed the covenant the consideration for the covenant was illusory." *Id.*

In light of this understanding of the "substantial period" requirement, the Court questions its applicability in this particular case. Put concretely, this exception protects employees from employers who hire workers, have them sign post-employment restrictive covenants, then fire them soon thereafter. *See id.* ("The minute after [the employee] signed the covenant not to compete, [the employer] could have fired him and then he would have had received nothing in exchange for the fresh promise represented by his signing of a new covenant."). In this situation, an individual is not only harmed by his loss of employment, but also by the enforcement of a restrictive covenant which limits his ability to obtain new employment. Given this predicament, courts have been willing to depart from the traditional rule of refusing to evaluate the adequacy of consideration, and have examined whether consideration has been provided in the form of employment for a "substantial period." Here, the concerns which animate the break from the traditional rule are not present. Rather than being terminated, it was Thrasher who ended his employment relationship with LKQ. This critical distinction (and the absence of any allegations suggesting that Thrasher's resignation was involuntary) raises doubts regarding whether the Court should attempt to evaluate the adequacy of consideration provided by LKQ to Thrasher in exchange for the promises he made in the Non-Competition Agreement. Despite these doubts, the Court proceeds to consider whether Thrasher received continued employment for a "substantial period."

LKQ contends that Thrasher's year-long employment with the company constituted

adequate consideration to support the enforceability of the Non-Competition Agreement, including its forum selection clause. (R. 17, LKQ's Resp. at 5-10.) Thrasher, on the other hand, argues that "most Illinois courts have applied a bright-line test, concluding that employment of at least two years is required to constitute substantial employment." (R. 18, Thrasher's Reply at 10.) Because his year-long stint with LKQ is arguably not continued employment for a "substantial period," Thrasher maintains that it is insufficient consideration to support the enforceability of the forum selection clause contained in the Non-Competition Agreement. (R. 13, Thrasher's Mem. at 3-6.)

Unfortunately, Illinois law does not provide a clear rule to apply in this case. While Thrasher is correct in noting that some Illinois courts have applied what appears to be a bright-line test in determining what constitutes a "substantial period" of employment, the law is unclear as to where the line should be drawn. Some Illinois cases indicate that a term of employment of at least two years can be properly considered as continued employment for a "substantial period." *See, e.g., Brown & Brown, Inc. v. Mudron,* 887 N.E.2d 437, 728-29 (Ill. App. Ct. 2008) ("Illinois courts have generally held that two years or more of continued employment constitutes adequate consideration"); *Applied Micro, Inc. v. SJI Fulfillment, Inc.,* 941 F. Supp. 750, 753 n.3 (N.D. Ill. 1996) (collecting cases). Other cases, however, suggest that employment for a year can be considered a "substantial period" of employment. *See Mid-Town Petroleum, Inc. v. Gowen,* 611 N.E.2d 1221, 1226 (Ill. App. Ct. 1993) (while noting that the issue of consideration was not directly addressed, citing approvingly to two cases involving a post-covenant term of employment of approximately a year).

Other courts have suggested, albeit in dicta, that courts are not limited to some numerical

formula in evaluating what constitutes a "substantial period" of employment. *Woodfield Grp., Inc. v. DeLisle*, 693 N.E.2d 464, 469 (Ill. App. Ct. 1998). "Factors other than the time period of the continued employment, such as whether the employee or the employer terminated employment, may need to be considered to properly review the issue of consideration." *Id.* For example, in *McRand, Inc. v. van Beelen*, 486 N.E.2d 1306 (Ill. App. Ct. 1985), the Illinois Appellate Court went beyond merely applying a bright-line test in considering whether a defendant was employed for a "substantial period" after signing a restrictive covenant. In concluding that sufficient consideration was provided to enforce a restrictive covenant, it considered the raises and bonuses received by the defendants, their voluntary resignation, and the increased responsibilities they received after signing a restrictive covenant. *Id.* at 1314.

Despite Thrasher's arguments to the contrary, the Court concludes that the "substantial period" requirement has been satisfied. In doing so, the Court refuses to apply a bright-line test. As mentioned above, it is unclear where the relevant line should be drawn. While Thrasher suggests that Illinois law establishes that at least two years of employment satisfies the "substantial period" of employment requirement, the Court's reading of Illinois law undermines this contention. Without a stronger foundation in law and logic, the Court cannot mechanically apply a bright-line test that, in certain situations, may have pernicious consequences. The more prudent course of action is to take the more fact-specific approach that some Illinois courts have suggested.

Applying such an approach, the Court finds that a "substantial period" of employment was provided to Thrasher. He worked at LKQ for about twelve months before resigning in early 2011. Both the length of his term of employment, along with his apparently voluntary

resignation, lead the Court to conclude that he was provided with a "substantial period" of employment. As such, he was provided adequate consideration to support the enforceability of the forum selection clause contained in the Non-Competition Agreement. Because the forum selection clause is enforceable, LKQ has satisfied its burden of showing that the Court has personal jurisdiction over Thrasher. His request under Rule 12(b)(2) is therefore denied.[1]

## II. Failure to state a claim

### A. Breach of contract

Next, Thrasher argues that because the complaint fails to allege consideration, LKQ's breach of contract claim is fatally defective. (R. 13, Thrasher's Mem. at 6.) In response, LKQ requests leave to amend its complaint to "include further factual detail relating to the formation of the [Non-Competition Agreement]." (R. 17, LKQ's Resp. at 10-11.) Prior to considering whether the allegations in the proposed amended complaint satisfy Rule 8, the Court will first briefly consider whether such an amendment is proper.

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading shall be freely given "when justice so requires"; the rule, however, expressly grants a plaintiff leave to amend her complaint "once as a matter of course before being served with a responsive pleading." *Foster v. DeLuca*, 545 F.3d 582, 583-84 (7th Cir. 2008) (internal quotation marks and citations omitted); Fed. R. Civ. P. 15(a). "Although the rule reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008)

---

[1] Given the disposition of this issue, the Court need not address LKQ's contention that a $5,000 "sign-on bonus" also served as consideration to support the Non-Competition Agreement.

11

(quoting *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir. 2002)).

Here, the Court concludes that LKQ has not unduly delayed in making its request. Nor will Thrasher suffer undue prejudice from the amendment of the complaint at this juncture in the litigation. What Thrasher appears to contend, however, is that the proposed amendments would be futile because "there is still no support for the allegation that [he] engaged in a bargained-for-exchange when he signed the [Non-Competition Agreement] sufficient to constitute consideration for the [Non-Competition Agreement]." (R. 18, Thrasher's Reply at 7.) Contrary to what Thrasher contends, the amendments to the complaint sufficiently allege consideration. (*See* R. 17, LKQ's Resp., Ex. E.) Thus, considered collectively, the allegations in the proposed second amended complaint present a classic breach of contract story that holds together. *See Swanson*, 514 F.3d at 404 (noting that to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject-matter of the case to present a story that holds together" ). As such, the proposed amendments would not be futile–LKQ may therefore file its second amended complaint. Thrasher's arguments under Rule 12(b)(6) challenging the allegations supporting LKQ's breach of contract claims are also rejected on identical grounds. Accordingly, his motion to dismiss Count I on Rule 12(b)(6) grounds is denied.

### B. Computer Fraud and Abuse Act

Though unstated in its complaint, it appears as if LKQ bases Count III on 18 U.S.C. § 1030(a)(2), which punishes individuals who intentionally access a computer without authorization or exceed authorized access and thereby obtain information from any protected computer.[2] Here, LKQ avers that Thrasher violated the Computer Fraud and Abuse Act by

---

[2] The statute defines a protected computer as a computer "which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

accessing protected computers owned by LKQ without authorization and destroying electronic data. (R. 5, First Am. Compl. ¶ 45.)

Thrasher argues that LKQ's Computer Fraud and Abuse Act claim fails because, *inter alia*, "LKQ does not allege that at any time while [he] was employed by LKQ his access to his LKQ issued computer was restricted by LKQ, or that LKQ ever told [him] that he was no longer permitted to access the computer." (R. 13, Thrasher's Mem. at 7.) He continues by asserting that "LKQ's allegation that because Thrasher allegedly breached his fiduciary duty he somehow lost permission to use the company issue computer is far-fetched, and not does not appear to be consistent with the language or intent of the statute LKQ is claiming was violated." (*Id.*)

Contrary to what Thrasher suggests, no allegation specifically noting that LKQ restricted his access to his company computer is necessary to state a Computer Fraud and Abuse Act claim. LKQ's allegations of a breach of duty are enough to properly allege that Thrasher lost his authorization to access his company computer. *See Int'l Airport Ctr., L.L.C. v. Citrin*, 440 F.3d 418, 420-21 (7th Cir. 2006) ("[The employee's] breach of his duty of loyalty terminated his agency relationship . . . and with it his authority to access the [company laptop], because the only basis of his authority had been that relationship.") Thrasher's motion to dismiss on Rule 12(b)(6) grounds is therefore also denied to the extent it challenges LKQ's Computer Fraud and Abuse Act claim.

## CONCLUSION

For the reasons state above, Thrasher's motion (R. 12) is DENIED. LKQ is ordered to file its second amended complaint on or before May 27, 2011. The parties are requested to immediately exhaust settlement possibilities in light of this opinion.

Entered: /s/ Ruben Castillo
**Judge Ruben Castillo**
**United States District Court**

**Dated:** May 23, 2011